## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMI EL FILALI, | |
| Plaintiff, | CIVIL NO. 1:23-cv-00133 |
| v. | |
| HARRISBURG AL OPERATIONS LLC, | (KANE, J.) (LATELLA, M.J.) |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

*Pro se* Plaintiff Sami El Filali filed two motions for sanctions relating to his claim that Defendant failed to turn over and destroyed video surveillance footage capturing an incident where he claims he was the victim of workplace discrimination. For the reasons set forth herein, the motions will be denied.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint on January 24, 2023. (Doc. 1). At the time the Complaint was filed, Plaintiff was represented by counsel. (*Id.*). Defendant answered the Complaint on April 17, 2023. (Doc. 8). Plaintiff's counsel filed a motion to withdraw as counsel on October 11, 2023, indicating that Plaintiff had terminated

1

him.  (Doc. 18).  The court granted that motion on October 17, 2023 and

provided Plaintiff with thirty (30) days to find new counsel or advise the

Court of his intention to proceed *pro se*.  (Doc. 21).  On November 21,

2023, the Court issued another Order indicating that Plaintiff failed to

comply with its October 17, 2023 Order and directing Plaintiff to notify

the Court by December 1, 2023 as to whether he retained new counsel

or intended to proceed *pro se*.  (Doc. 23).  On November 30, 2023,

Plaintiff filed a letter to the docket stating that "[T]he Counsel [sic] of

American Islamic Relation is my new counsel in this case."  (Doc. 24).

However, the following day, December 1, 2023, Plaintiff filed another

letter to the docket indicating that he would be proceeding *pro se*.  (Doc.

25).

The matter was referred to Chief Magistrate Judge Bloom for

pretrial management on December 20, 2023.  Defendant filed a Motion

for Summary Judgment and supporting brief on May 14, 2025.  (Doc.

66).  On June 10, 2025, the matter was reassigned to the undersigned

magistrate judge for pretrial management.  Plaintiff filed a brief in

opposition to summary judgment on August 19, 2025 and then filed a

request for a copy of a deposition on August 21, 2025.  (Docs. 70, 71).

Defendant filed a reply brief in further support of summary judgment on September 2, 2025.  (Doc. 72).

Plaintiff then filed a "Request to appoint a representative" on September 8, 2025.  (Doc. 74).  On that same date, he filed a "Motion to compel the defendant to release the security camera recording tapes" (hereinafter "Motion to Compel").  (Doc. 75).  On September 16, 2025, he filed a "Memorandum and Brief Summary Defendant's False Allegatio[n]s and Misleading Facts."  (Doc. 76).

We issued a Memorandum (Doc. 78) and Order (Doc. 79) on October 30, 2025, directing Plaintiff to provide to the Court for *in camera* review any (1) documentation from a public agency or court of record that he has been adjudicated incompetent, or (2) documentation from a medical provider that the type of mental illness he is being treated for renders him legally incompetent, to the extent such documentation exists.  On November 20, 2025, having received no response from Plaintiff, we filed an additional Order again directing Plaintiff to provide the specified documentation on or before December 4, 2025.  (Doc. 80).

On December 1, 2025, the Court received documents from Plaintiff for *in camera* review. After reviewing those submissions, we issued a Memorandum Opinion (Doc. 82) and Order (Doc. 83) denying Plaintiff's Request to Appoint a Representative (74). On December 22, 2025, Plaintiff filed a Motion for Reconsideration of that Order (Doc. 89), which we denied. (Doc. 91).

With respect to his Motion to Compel, we issued an Order and Memorandum on December 9, 2025 denying the motion. (Doc. Nos. 84, 85). Plaintiff filed a Motion for Reconsideration on December 29, 2025. (Doc. 92). In order to fully address Plaintiff's Motion for Reconsideration, we issued an Order on December 30, 2025 directing Defendant to submit a "verified response indicating (1) the efforts it took to identify the requested video footage; and (2) the results of those efforts." (Doc. 93). In compliance with that Order, Defendant filed submitted an affidavit on January 7, 2026. (Doc. 94). On February 2, 2026 we denied Plaintiff's Motion for Reconsideration.

On November 25, 2025, Plaintiff filed a Motion for Sanctions. (Doc. 81). Plaintiff filed an additional Motion for Spoliation Sanctions on January 22, 2026. (Doc. 97). In compliance with our Order to file a

response, Defendant filed an opposition to Plaintiff's Motion for

Spoliation Sanctions on January 28, 2026.  (Doc. 101).  We now consider

Plaintiffs' two motions for sanctions.

## II.    LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence,

or the failure to preserve property for another's use as evidence in

pending or reasonably foreseeable litigation." *Paramount Pictures*

*Corp. v. Davis*, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (quoting *Mosaid*

*Techs., Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 335

(D.N.J. 2004)).  When a district court finds that spoliation has occurred,

it has the authority to fashion an appropriate sanction to remedy the

damage to other parties.  *Mosaid*, 348 F. Supp. 2d at 335.

District courts in the Third Circuit previously relied on both the

Federal Rules of Civil Procedure and the inherent authority of the court

in imposing sanctions for spoliation of any kind of evidence.  *Bistrian v.*

*Levi*, 448 F. Supp. 3d 454, 464 (E.D. Pa. 2020).  In 2015, however,

Federal Rule of Civil Procedure 37 was amended to provide a uniform

standard governing spoliation sanctions for the loss of electronically

stored information.  *Id*.  The Supreme Court promulgated amended

Rule 37(e) in recognition of "the serious problems resulting from the continued exponential growth in the volume of [electronically stored] information." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Where the amended rule applies, it provides the exclusive remedy for spoliation of electronically stored information ("ESI"), foreclosing reliance on the court's inherent authority. *Id.*

Rule 37(e) provides the standard for determining whether spoliation of ESI has occurred. Amended Rule 37(e) provides that spoliation occurs where ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." The advisory committee's notes to the 2015 amendment detail the elements of spoliation of ESI. First, the spoliating party was under a duty to preserve when the loss occurred. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Second, the lost ESI was within the scope of the duty to preserve. *Id.* ("The new rule applies only if *the lost information* should have been preserved in the anticipation or conduct of litigation...." (emphasis added)). Third, "the information was lost because the party failed to

take reasonable steps to preserve" it.  *Id.*  Fourth and finally, because

ESI "often exists in multiple locations," spoliation occurs only where the

information is truly lost and not recoverable elsewhere.  *Id.*

The Third Circuit has provided three factors that courts must

consider when contemplating Rule 37 sanctions:

> (1) the degree of fault of the party who altered or
> destroyed the evidence; (2) the degree of prejudice
> suffered by the opposing party; and (3) whether
> there is a lesser sanction that will avoid
> substantial unfairness to the opposing party and,
> where the offending party is seriously at fault,
> will serve to deter such conduct by others in the
> future.

*GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019)

(citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.

1994)).

## III.  DISCUSSION

In Plaintiff's initial Motion for Sanctions, he stated that on

December 23, 2024, he "filed a subpoena with this honorable court

addressed to the defendant t[h]rough his counsel to release the security

camera footage."  (Doc. 81 at 1).  He claimed that the subpoena went

unanswered.  (*Id.*).  Further, he asserted that on November 25, 2025, he

filed a "safe harbor motion and sent it via certified mail to the

7

defendant'[s] attorney." (*Id*. at 2). Plaintiff requested that the Court

"take the appropriate severe sanction against the defendant." (*Id*.).

In his second motion for "Spoliation Sanctions," Plaintiff alleges

that the Defendant refused to release evidence that is "relevant and

very important for the above case." (Doc. 97 at 1). Plaintiff argues that

the "HR vice president confirmed that the building had security camera

before," but she also confirmed that Defendant had a new surveillance

system installed in January 2023 and that the footage was not saved.

(*Id*. at 2). Plaintiff alleges that "when the defendant realized that

charges were under way against him (it) he rushed to destroy evidence

first . . ." (*Id*.). Plaintiff claims that when he first filed his "2 written

complaints" in March 2022 with Defendant, "Antonia [B]ultron said she

had access to records and information relevant to the inquiry regarding

the surveillance footage maintained by the facility." (*Id*. at 3). He

further claims that his complaint contained specific information about

the area, date and time where the incident occurred. (*Id*.) Plaintiff

asserts that the evidence was "destroyed, deleted, withheld, overwritten

or simply was not saved" notwithstanding that Defendant had a "duty

to . . . preserve the evidence while charges are pending against him (it),"

which constitutes spoliation. (*Id*. at 5). Accordingly, he seeks sanctions including evidence preclusion, witness preclusion, monetary sanctions, adverse inference, issues sanctions, dismissal or default judgment, dismissal of the defendant's claim,[1] limitation on damage, evidence rulings, prejudice to the opposing parties and any penalties the court sees appropriate. (*Id*. at 5).

Defendant responded to Plaintiff's request for spoliation sanctions by arguing that by the time it was arguably under a duty to preserve evidence relating to the incident at issue in Plaintiff's Complaint, the surveillance footage would have been overwritten as a matter of course. (Doc. 101 at 7). Further, Defendant argues that Plaintiff cannot show that Defendant acted in bad faith, and therefore, he is not entitled to an adverse inference. (*Id*. at 8). Finally, Defendant argues that "Plaintiff has never explained what his hypothetical footage would depict or how it would advance any viable claim . . . . Plaintiff asserts that a coworker cursed at him, asked his name, and asked him if he had taken out the trash . . . . Even if that were true – and even if such an exchange had

---

[1] We note that Defendant has not filed a counterclaim in this matter. (*See* Doc. 5). Accordingly, there is no claim of Defendant's that would be subject to dismissal.

somehow been captured on silent surveillance footage – it would not support Plaintiff's claims of a hostile work environment based on his race, religion, or national origin." (*Id.* at 10).

Against that backdrop, we now consider whether spoliation of evidence occurred and if so, whether sanctions are warranted.

A. <u>Defendant Was Not Under a Duty To Preserve When the Loss Occurred</u>.

Rule 37(e) applies to "electronically stored information that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). The Rule does not apply to information that was lost or destroyed before a duty to preserve arose. Fed R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The Rule incorporates the common-law "duty to preserve relevant information when litigation is reasonably foreseeable." *Id.*

The common-law standard is an objective one, asking not whether a party actually anticipated litigation, but "whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Bistrian*, 448 F. Supp. 3d at 468 (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). There is no single bright line that definitively marks when litigation reasonably should be

10

anticipated. *Id.* Instead, courts consider a variety of factors, including the type and seriousness of the injury; how often similar kinds of incidents lead to litigation; the "course of conduct between the parties, including past litigation or threatened litigation"; and what steps both parties took after the incident and before the loss of the evidence, including whether the defendant initiated an investigation into the incident." *Id.*

When a party argues that spoliation occurred before the complaint was filed, the court must conduct a fact-sensitive inquiry to determine at what point the spoliating party reasonably should have anticipated the litigation. *Id.* In the employment context, courts have observed that the duty to preserve evidence arose when the employer was served with a copy of the Pennsylvania Human Relations Committee (PHRC) complaint or EEOC Notice of Charge. *See Thompson v. Bridgeton Bd. of Educ.*, 9. F. Supp. 3d 446, 453 (D.N.J. 2014); *Tabon v. University of Pennsylvania Health System,* No. 10–2781, 2012 WL 2953216, at *2 (E.D.Pa. July 20, 2012) ("In employment discrimination cases, a duty to preserve arises when the defendant receives notice of an EEOC charge.").

Here, we note that Plaintiff emailed Defendant on March 13, 2022, alleging "[r]acial harassment, discrimination." (*See* Doc. 101 at 13). However, notwithstanding the title of Plaintiff's email, the somewhat incoherent narrative set forth in that email did not include facts that would put an employer on notice of a potential discrimination claim. (*See id*.). Rather, at best, it describes a dispute with a co-worker where the co-worker asked him questions, including whether he took the trash out, and cursed at him. (*Id*.). There is nothing in that email to suggest that Plaintiff was subject to any type of discrimination based upon his race, religion, or national origin. (*Id*.).

Defendant states that it received a copy of "Plaintiff's filing with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC")" on October 5, 2022. (Doc. 101 at 7). Accordingly, we find that Defendant should have anticipated litigation at that point and so, its duty to preserve was triggered on October 5, 2022. *See, e.g.*, *Thompson*, 9. F. Supp. 3d at 453. To the extent video surveillance footage was within the scope of the duty to preserve, Defendant indicated that any such footage that "*may*

have existed would have been overridden in the normal course" by that date.  (Doc. 101) (emphasis in original).

Because Defendant was not under a duty to preserve evidence at the time any video surveillance footage was overwritten in the normal course, there was no spoliation pursuant to Federal Rule of Civil Procedure 37(e).  Accordingly, Plaintiff's Motions for Sanctions (Docs. 81 and 97) will be denied.

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff's Motions for Sanctions (Docs. 81 and 97) will be denied.  An order follows.

**Dated: February 2, 2026**          _**s/ Leo A. Latella**_
                                   **LEO A. LATELLA**
                                   **United States Magistrate Judge**

13